# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
——————————————————————————

## WHIRLPOOL FINANCIAL CORPORATION, ET AL.,

Petitioners-Appellants,

v.

## COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

——————————————————————————

On Appeal from the United States Tax Court

——————————————————————————

## BRIEF OF AMICUS CURIAE
## THE NATIONAL ASSOCIATION OF MANUFACTURERS
## IN SUPPORT OF APPELLANTS' PETITION FOR REHEARING AND
## REHEARING EN BANC

——————————————————————————

Lowell D. Yoder
(Lead Counsel)
 *lyoder@mwe.com*
Andrew R. Roberson
 *aroberson@mwe.com*
Jonathan D. Lockhart
 *jlockhart@mwe.com*
Elizabeth Lu
 *elu@mwe.com*
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
(312) 984-2000
(312) 984-7700 (fax)

David G. Noren
 *dnoren@mwe.com*
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol St., NW
Washington, DC 20001
(202) 756-8256

*Attorneys for The National Association of Manufacturers as Amicus Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

CORPORATE DISCLOSURE STATEMENT ......................................................v

STATEMENT OF INTEREST ..................................................................1

ARGUMENT .................................................................................3

I. The Majority Denies the Public the Right to Rely on Regulations .................3

II. The Majority's Novel Interpretation of Section 954(d)(2) Conflicts with Over 50 Years of Tax Law ...........................................................6

CONCLUSION ..............................................................................12

CERTIFICATE OF COMPLIANCE ...............................................................14

CERTIFICATE OF SERVICE .................................................................15

# TABLE OF AUTHORITIES

## Cases

*Ashland Oil, Inc. v. Commissioner*, 95 T.C. 348 (1990) ...........................................6

*Bausch & Lomb, Inc. v. Commissioner,* 71 T.C.M. 2031 (1996).............................7

*Burdue v. FAA*, 774 F.3d 1076 (6th Cir. 2014) .........................................................4

*Columbia Broadcasting Systems, Inc. v. United States,* 316 U.S. 407 (1942) ..........4

*Dave Fischbein Manufacturing Co. v. Commissioner,* 59 T.C. 338 (1972)..............7

*Estate of Mittleman v. Commissioner*, 522 F.2d 132 (D.C. Cir. 1975) .....................5

*Gafurova v. Whitaker*, 911 F.3d 321 (6th Cir. 2018) ................................................4

*Mutual Savings Life Insurance v. United States*, 488 F.2d 1142 (5th Cir. 1974)......5

*O'Neill v. United States*, 410 F.2d 888 (6th Cir. 1969) ............................................5

*United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954).....................3, 4

*United States v. Larionoff*, 431 U.S. 864 (1977) ......................................................5

*United States v. Nixon*, 418 U.S. 683 (1974).............................................................6

*Vetco, Inc. v. Commissioner*, 95 T.C. 579 (1990)......................................................6

*Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004)...............4

## Statutes

26 U.S.C. § 954(d) .....................................................................................................7

26 U.S.C. § 954(d)(1)..................................................................................................7

26 U.S.C. § 954(d)(2)................................................................. 3, 5, 6, 7, 8, 9, 10, 12

## Regulations

Treas. Reg. § 1.954-3(a)(4)..................................................................7

Treas. Reg. § 1.954-3(b)(1)(ii)..............................................................8

Treas. Reg. § 1.954-3(b)(1)(ii)(*b*).......................................................12

Treas. Reg. § 1.954-3(b)(1)(ii)(c)(1), *Ex.* ........................................12

Treas. Reg. § 1.954-3(b)(1)(ii)(*c*)(2), *Ex* ........................................12

Treas. Reg. § 1.954-3(b)(1)(ii)(c)(3)(v), *Ex. 1* ................................12

Treas. Reg. § 1.954-3(b)(1)(ii)(c)(3)(v), *Ex. 2* ................................12

Treas. Reg. § 1.954-3(b)(2)..................................................................8

Treas. Reg. § 1.954-3(b)(2)(ii)(e) ........................................................8

Treas. Reg. § 1.954-3(b)(4), *Ex. 1* ....................................................12

Treas. Reg. § 1.954-3(b)(4), *Ex. 2* ....................................................12

Treas. Reg. § 1.954-3(b)(4), *Ex. 3* .............................................. 11, 12

Treas. Reg. § 1.954-3(b)(4), *Ex. 5* ....................................................12

Treas. Reg. § 1.954-3(b)(4), *Ex. 6* (1964)........................................12

Treas. Reg. § 1.954-3(b)(4), *Ex. 7* (1964)........................................12

Treas. Reg. § 1.954-3(b)(4), *Ex. 8* ....................................................12

Treas. Reg. § 1.954-3(b), 29 Fed. Reg. 6385, 6396 (May 15, 1964) ......................8

**Other Authorities**

H. Rep. 87-1447, 62 (1962) ........................................................................7

IRS Chief Counsel Notice 2003-014 (May 8, 2003) ...................................5

S. Rep. 87-1881, 245 (1962) .......................................................................7

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A), the *Amicus Curiae* further described below is a nonprofit organization with no parent corporation and in which no person or entity owns stock.

## STATEMENT OF INTEREST

The National Association of Manufacturers ("NAM") is the largest manufacturing association in the United States, representing small and large manufacturers in every industrial sector and in all 50 states. Manufacturing employs more than 12 million men and women, contributes roughly $2.35 trillion to the U.S. economy annually, has the largest economic impact of any major sector, and accounts for nearly two-thirds of all private-sector research and development in the nation. NAM is the voice of the manufacturing community and the leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the Nation.

NAM has a significant interest in the legal issues presented in this "difficult" and "hard" case (slip op. at *13, *17), the first to address the interplay between the statutory foreign base company sales income ("FBCSI") rules and the implementing Treasury regulations.[1] NAM's members have relied on the regulations for over 50 years to report foreign subsidiaries' income from manufacturing and selling products that is subject to current U.S. taxation. The panel's decision disregarding the

---

[1] No part of this brief was authored in whole or in part by counsel for a party. No party or its counsel contributed money intended to fund preparing or submitting this brief. No person other than the *Amicus Curiae* made a monetary contribution intended to fund this brief's preparation or submission.

manufacturing exception provided by those regulations has the potential to significantly adversely affect NAM's members.

**ARGUMENT**

Rehearing is exceptionally important here. The majority denied Appellants the right to rely on the regulatory manufacturing exception to FBCSI. If not corrected, this would, contrary to well-established precedent, allow courts to disregard longstanding regulations on which the public has justifiably relied. This disregard for regulations could result in hundreds of millions of dollars of unexpected and unjustified taxes, disrupt efficient global business operations, and confuse taxpayers (and the government) concerning how to apply the tax laws. Compounding this error, the majority disregards the regulations based on a novel interpretation of 26 U.S.C. § ("section") 954(d)(2) not argued by the government or adopted by the Tax Court, and contrary to decades-old regulations promulgated contemporaneously with the underlying statute and at Congress's express direction.

## I. The Majority Denies the Public the Right to Rely on Regulations

The majority disregards regulations the Tax Court found valid. By denying Appellants the right to rely on the regulatory manufacturing exception, the decision conflicts with precedent of the Supreme Court, this circuit, and other circuits that binds governmental agencies to, and permits the public to rely on, regulations.

*United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954), established the principle that the public may rely on validly promulgated regulations. There, an individual argued that the agency failed to comply with its regulations when it denied

his application to suspend deportation. The Supreme Court agreed, holding that an agency must abide by its own valid and applicable regulations (the "*Accardi* doctrine").[2]

This Court applies the *Accardi* doctrine. For example, in *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004), it held that the Social Security Administration must follow its own regulations when administering claims for disability insurance benefits: "It is an elemental principle of administrative law that agencies are bound to follow their own regulations," because failure to bind agencies to their regulations "tends to cause unjust discrimination and deny adequate notice" to affected persons. *Id.* at 545 (internal references and quotations omitted).[3]

The *Accardi* doctrine applies to tax regulations. For example, in *Mutual Savings Life Insurance v. United States*, 488 F.2d 1142, 1145 (5th Cir. 1974), the

---

[2] *Id.* at 268 ("It is important to emphasize that we are not here reviewing and reversing the *manner* in which discretion was exercised. . . . Rather, we object to the Board's alleged *failure to exercise* its own discretion, contrary to existing valid regulations."). *See also Columbia Broadcasting Systems, Inc. v. United States,* 316 U.S. 407, 422 (1942) ("When, as here, the regulations are avowedly adopted in the exercise of [administrative rule-making power] . . . they must be taken by those *entitled to rely upon* them as what they purport to be . . . which, until amended, are controlling alike upon the [administrative agency] and all others whose rights may be affected by the [administrative agency's] execution of them.") (emphasis added).
[3] *See also Gafurova v. Whitaker*, 911 F.3d 321, 330 (6th Cir. 2018); *Burdue v. FAA*, 774 F.3d 1076, 1082 n.2 (6th Cir. 2014) ("Under the [*Accardi* doctrine], a party may always challenge an agency's failure to abide by its own regulations.") (internal citations omitted).

Fifth Circuit held that, despite the government's contrary arguments, "A taxpayer has the right to rely upon the Government's Regulations . . . . Treasury Regulations having the force and effect of law are binding on tax officials, as well as taxpayers. . . . [T]he Government cannot just abandon . . . the regulation[] and direct it into some type of obscurity oblivion as if it never existed" (internal citations omitted). Other courts and the Commissioner agree.[4]

Here, Appellants (and NAM's members) have a right to rely on the regulatory manufacturing exception. Congress specifically authorized promulgation of the regulations, the Commissioner did not (and could not) argue the regulatory manufacturing exception was inapplicable, and the Tax Court upheld the regulations' validity. As explained below, the majority's disregard of the regulatory manufacturing exception conflicts with the uniform interpretation of section 954(d)(2) for over 50 years.[5] Taxpayers have relied on the regulations in running their global operations for decades. Denying taxpayers the right to rely on

---

[4] *See, e.g., Estate of Mittleman v. Commissioner*, 522 F.2d 132, 141 n.61 (D.C. Cir. 1975); IRS Chief Counsel Notice 2003-014 (May 8, 2003) (Commissioner not permitted to argue contrary to final Treasury regulations in litigation). While Treasury is bound by its regulations, taxpayers may challenge their validity. *See, e.g.*, *United States v. Larionoff*, 431 U.S. 864 (1977); *O'Neill v. United States*, 410 F.2d 888 (6th Cir. 1969).

[5] Only two cases have addressed the application of section 954(d)(2); each concluded that the foreign subsidiary's low-taxed income was not FBCSI under the statute and the regulations. *Ashland Oil, Inc. v. Commissioner*, 95 T.C. 348 (1990); *Vetco, Inc. v. Commissioner*, 95 T.C. 579 (1990).

regulations under these circumstances would not only create confusion in administering section 954(d)(2)'s branch rules, but also undermine the public's ability to rely on regulations providing necessary guidance that a court later finds to conflict with its own novel interpretation of a statute.[6]

## II.     The Majority's Novel Interpretation of Section 954(d)(2) Conflicts with Over 50 Years of Tax Law

The substantive issue is whether income derived by Appellants' Luxembourg subsidiary ("Lux"), a controlled foreign corporation ("CFC"), from the sale of products to related parties that were manufactured in Mexico should have been included currently in the taxable income of the domestic parent as FBCSI under section 954(d), or whether U.S. taxation of such income was deferred.  Under section 954(d)(1)'s general definition and the implementing regulations, such sales income

---

[6] The public's reliance interest in valid and applicable agency regulations should be protected not only from executive branch actions that may undermine it, but also from judicial branch actions that may do so.  *See United States v. Nixon*, 418 U.S. 683, 696 (1974) ("Here, as in *Accardi*, it is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority.  But he has not done so.  So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.") (internal citations omitted).

is not FBCSI where it is from the sale of products manufactured by the CFC (i.e., the "manufacturing exception").

As stated in the legislative history, Congress defined FBCSI so that: "The definition of [FBCSI] does not apply to income of a controlled foreign corporation from the sale of a product which it manufactures."[7] Since 1964, Treasury regulations have provided this manufacturing exception.[8]

The Tax Court assumed Lux's income derived from selling products manufactured in Mexico qualified for the manufacturing exception, in which case Lux's income would not be FBCSI under section 954(d)(1)'s general definition. It then applied section 954(d)(2), which contains additional rules for determining a CFC's FBCSI when the CFC carries on activities in a foreign branch (here, Mexico). Section 954(d)(2) provides that, if certain conditions apply, then "under regulations" income attributable to a foreign branch shall be FBCSI.

Following the 1962 enactment of the FBCSI rules, in the same 1964 regulation package referenced above, Treasury finalized rules for determining the amount of a

---

[7] S. Rep. 87-1881, 245 (1962); *see also* H. Rep. 87-1447, 62 (1962).
[8] Treas. Reg. § 1.954-3(a)(4). Only two cases have addressed the manufacturing exception; both applied the regulations as written and found that each CFC's low-tax sales income was not FBCSI. *See Dave Fischbein Manufacturing Co. v. Commissioner,* 59 T.C. 338 (1972); *Bausch & Lomb, Inc. v. Commissioner,* 71 T.C.M. 2031 (1996).

CFC's income that is FBCSI under section 954(d)(2).[9]  Under those regulations, Lux's income from manufacturing and selling the products at a location in Mexico was not FBCSI; only income, if any, derived by Lux from selling the products from a location outside Mexico was FBCSI.[10]  While the Tax Court applied the regulations, it did not analyze how much of Lux's income was attributable to its manufacturing operations and assets in Mexico, and granted the Commissioner summary judgment on the basis that Lux's income not subject to tax in Mexico (around 90% of Lux's sales income) was FBCSI.

On appeal, *inter alia*, Appellants argued for remand because a material factual question exists concerning how much of Lux's income was attributable to its operations and assets in Mexico and was not FBCSI because it qualified for the manufacturing exception.  Lux carried on all manufacturing operations in Mexico, all the manufacturing assets were located in Mexico, and the manufactured products were sold from Mexico primarily for export.  Under well-established principles of international taxation (adopted by the United States), Luxembourg treated for tax purposes all Lux's manufacturing and selling income as derived from carrying on

---

[9] Treas. Reg. § 1.954-3(b), 29 Fed. Reg. 6385, 6396 (May 15, 1964).

[10] *See* Treas. Reg. § 1.954-3(b)(1)(ii) and (2).  The regulations expressly provide that a branch's income is not FBCSI if it would not be FBCSI if derived by a separate CFC "under like circumstances," including under the manufacturing exception. Treas. Reg. § 1.954-3(b)(2)(ii)(e).

the operations in Mexico; under its tax treaty with Mexico, Luxembourg was required to cede taxing jurisdiction to Mexico, and thus did not subject such income to taxation. Under Mexico's special tax regime designed to attract foreign companies to manufacture products in Mexico for export, Mexico exempted from taxation a substantial portion of Lux's income attributable to the manufacturing operations and assets in Mexico. Thus, the amount of income subject to Mexican taxation could not be a basis for determining Lux's income attributable to manufacturing and selling the products at a location in Mexico.

The majority held that the issue was resolved by the text of section 954(d)(2) alone, without considering Treasury's regulations. According to the majority's flawed interpretation of section 954(d)(2), if a CFC carries on activities in a foreign branch, all of its sales income is FBCSI.

Because the majority relied solely on the statutory language, it rejected Appellants' argument that the regulatory manufacturing exception applied to Lux's income from manufacturing the products in Mexico. Thus, the majority failed to address the material factual question concerning how much of Lux's income was attributable to manufacturing and selling the products in Mexico.

The majority supported its interpretation of section 954(d)(2) by describing President Kennedy's 1961 proposal to Congress to subject to current U.S. taxation all low-taxed earnings of foreign subsidiaries. The majority quotes the following

example of earnings that would be subject to taxation under the proposal: income derived by "a foreign subsidiary which manufacture[d] for its American parent parts or finished products which it then [sold] to the American parent corporation for distribution in the United States."

Congress, however, rejected this proposal. When enacting section 954(d) in 1962, Congress significantly limited the income of CFCs from manufacturing and selling property that is subject to current taxation as FBCSI. As quoted above, Congress specifically stated that FBCSI does not include a CFC's income from manufacturing and selling the products to any person, including its domestic parent. No legislative history supports the majority's interpretation.

Further, as described by the dissent, the majority's interpretation is contrary to the interpretation of section 954(d)(2) that has governed for over 50 years. The dissent correctly concludes that all of Lux's income qualified for the regulatory manufacturing exception (or, alternatively, supported remand to determine factual questions concerning the application of the exception).

The dissent's conclusion is amply supported by the 1964 regulations, which offer an example parallel to Appellants' facts. A CFC organized in Country X manufactures and sells products through a Country Y branch. Ten percent of the products are sold to Country Y customers and 90% are sold for export. The CFC's sales income is not subject to tax in Country X. Country Y has a 50% tax rate, but

subjects to tax only income from selling products to Country Y customers. To illustrate, if the CFC has $100 of sales income, it would pay $5 of tax ($100 x 10% x 50%), and $90 is not taxed. The example concludes that, when the country where the products are manufactured exempts certain income from tax—like Mexico's incentive regime—none of the $100 of sales income is FBCSI under the manufacturing exception.[11]

Under the Tax Court's opinion, it would appear that, contrary to the example, the $90 of untaxed income would be FBCSI and only the $10 subject to Country Y tax would qualify for the manufacturing exception. And under the majority's decision (which disregards the regulatory manufacturing exception), the entire $100 would be FBCSI. However, as the dissent correctly concludes—consistent with the example—all $100 would qualify for the manufacturing exception and not incur current full-rate tax as FBCSI.[12]

A logical extension of the majority's decision would be to disregard other regulatory rules that limit a CFC's FBCSI under section 954(d)(2). For example, the regulations do not treat a CFC's sales income as FBCSI where income of the

_____

[11] Treas. Reg. § 1.954-3(b)(4), *Ex.* 3.

[12] Numerous regulatory examples apply the manufacturing exception for purposes of section 954(d)(2) to all or a portion of the income of a CFC that manufactures and sells products. *See* Treas. Reg. § 1.954-3(b)(1)(ii)(c)(1), *Ex.*; -3(b)(1)(ii)(c)(3)(v), *Ex.* 1; -3(b)(4), *Exs.* 1-3, 5; Treas. Reg. § 1.954-3(b)(4), *Exs.* 6-7 (1964).

home office is not taxed at a materially lower rate than the rate that would apply if the income had been taxed in the manufacturing branch country[13]—the majority decision apparently would treat the CFC's income as FBCSI, notwithstanding the fact that the regulatory rate disparity requirement has been at the center of the branch rule since 1964.

## CONCLUSION

NAM respectfully submits that rehearing is necessary for the Court to address the exceptionally important issues presented. If allowed to stand, the majority's decision would allow courts to disregard longstanding regulations on which the public has justifiably relied for decades, which could significantly harm NAM's members, as well as disrupt tax administration and other important regulatory affairs.

Respectfully submitted,

/s/ Lowell D. Yoder_____
Lowell D. Yoder
(Lead Counsel)
        *lyoder@mwe.com*
MCDERMOTT WILL & EMERY LLP
444 West Lake St., Suite 4000
Chicago, IL 60606
(312) 984-7523
(312) 984-7700 (fax)

---

[13] Treas. Reg. § 1.954-3(b)(1)(ii)(*b*). *See* Treas. Reg. § 1.954-3(b)(1)(ii)(*c*)(2), *Ex*; -3(b)(1)(ii)(*c*)(3)(v), *Ex*. 2; -3(b)(4), *Ex*. 8.

Andrew R. Roberson
    *aroberson@mwe.com*
Jonathan D. Lockhart
    *jlockhart@mwe.com*
Elizabeth Lu
    *elu@mwe.com*
MCDERMOTT WILL & EMERY LLP
444 West Lake St., Suite 4000
Chicago, IL 60606
(312) 984-7762
(312) 984-7700 (fax)

David G. Noren
    *dnoren@mwe.com*
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol St., NW
Washington, DC 20001
(202) 756-8256
(202) 756-8087 (fax)

*Attorneys for The National Association of Manufacturers as Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 2,589 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and 6th Cir. R. 32(b)(1).  I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman type style.

/s/ Lowell D. Yoder_____
Lowell D. Yoder
(Lead Counsel)
 *lyoder@mwe.com*
MCDERMOTT WILL & EMERY LLP
444 West Lake St., Suite 4000
Chicago, IL 60606
(312) 984-7523
(312) 984-7700 (fax)


*Attorney for The National Association of Manufacturers as Amicus Curiae*

**CERTIFICATE OF SERVICE**

I certify that on January 27, 2022, I electronically filed the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system, which will send notice to all registered CM/ECF users. Participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

/s/ Lowell D. Yoder_____
Lowell D. Yoder

*Attorney for The National Association of Manufacturers as Amicus Curiae*